## CHAPMAN v. BENT.

### L. A. No. 987; July 24, 1901.

#### 65 Pac. 959.

**Pleading.**—A Bill of Particulars, Served by Plaintiff in response to a demand therefor, becomes a part of the complaint.[1]

**Appeal—Conflicting Evidence.**—In Order That Findings and Judgment on conflicting evidence may stand on appeal, such conflict must be one that is material.

**Work and Labor.**—Plaintiff Hauled Certain Pipe for a Third Party, who was under contract with defendant, at so much per ton, upon the terms of that contract, up to a certain date, when he claimed

---

[1] Cited and followed in Gage v. Billing, 12 Cal. App. 692, 108 Pac. 666, a case in which services charged for specifically in the bill of particulars were not strictly within the allegations of the complaint.

to have commenced working for defendant. Plaintiff testified that he sent defendant word that he would not work unless defendant paid him; that such third party was going away; and on cross-examination he said defendant agreed to pay him for what he had done if he could get an order from such third party, which order was obtained. He testified that nothing was said whether he was to be paid by the day or the ton in making his alleged contract with defendant. A witness testified that plaintiff told him, after he commenced working for defendant, that he was hauling by the ton. Defendant testified that he made no agreement with plaintiff, and that the latter asked him to guarantee the payment for the work done for such third party. Plaintiff submitted a bill of particulars, specifying the number of teams used, and number of days at work, having, at the conclusion of his work, submitted a statement of the number of tons hauled. Held, that a finding that plaintiff performed work and labor for defendant was not justified by the evidence.

APPEAL from Superior Court, Los Angeles County; B. N. Smith, Judge.

Action by D. D. Chapman against A. S. Bent. From a judgment in favor of plaintiff and an order denying a new trial defendant appeals. Reversed.

Jas. Burdett for appellant; Halsey W. Allen for respondent.

HAYNES, C.—Action for work, labor and services. The plaintiff had findings and judgment, and defendant appeals from the judgment and from an order denying a new trial.

In April, 1899, the defendant entered into a contract with the South Mountain Water Company to construct for it a pipe-line near Redlands. On June 1st he entered into a contract with one George Nolan, in writing, to haul the pipe and cement necessary to construct it from the railroad, and distribute it along the line, for the first part of the line, to a specified point, at the price of $1.15 per ton, and for the remainder—the longer haul—at $1.50 per ton; Nolan "to stand all breakages in handling and hauling" the pipe. The plaintiff, D. D. Chapman, was consulted by Nolan in determining the terms upon which the contract should be taken, but, so far as known to Bent, had no interest in it, except that when Nolan commenced work under his contract, about June 9th, Chapman put on several teams, and did hauling thereon for Nolan upon the terms specified in the contract between

Nolan and defendant. The contract between defendant and the water company required the pipe-line to be completed on or before August 1st. Nolan, as well as Chapman, put on several teams, but about the last of June defendant became convinced that, unless more teams were put on, the pipe would not be hauled in time to complete the line within the time limited therefor. Defendant thereupon notified Nolan to put on more teams, and was told that he could not find them, and Nolan thereupon authorized defendant to procure them, and to pay for them at the rate of six dollars per day, the teams so procured to be first paid for out of the money that would be due to him under his contract. Defendant thereupon advertised for teams, and procured sufficient, in conjunction with the teams of Nolan and the plaintiff, to complete the hauling on July 31st. The plaintiff claims that about the last of June or first day of July he quit working for Nolan, and thereafter worked for Mr. Bent; and this action is prosecuted to recover therefor. The action is upon a quantum meruit for work, labor and services in furnishing teams for the defendant for hauling water-pipes, alleged to be of the value of $750. The court found the value to be $456, and gave judgment therefor.

When suit was commenced, the defendant demanded a bill of particulars of plaintiff's claim, and it was furnished, showing the number of teams furnished by plaintiff each day from July 1st to July 26th, both days included. The plaintiff testified, in substance, that he was working for Nolan up to the 1st of July, and after that he worked for Mr. Bent; that he sent word to Mr. Bent by two of his teamsters, Reynolds and Dutch, that, if he wanted him to team, he would have to pay for it himself; that next morning, June 29th, he thought, he saw Mr. Bent, and told him he would have nothing more to do with Nolan, and, if he did any more hauling, he must pay for it himself, and that Bent said he would if he (plaintiff) did the work; that plaintiff continued to work, and put on three more teams, and kept on working until the job was finished. Upon cross-examination he testified that he did not suppose that he could compel Bent to pay for the work he had already done, but that he asked him if he could not see that he got his pay for that, and that Bent agreed to pay him for what he had already done if Nolan would give an order, and

that Bent said he would get an order, and that he commenced work for Bent on the 1st of July; that he had been hauling for Nolan by the ton, but he had no understanding with Bent as to whether he should be paid by the day or the ton, but supposed he was to work by the day, and did not know whether he worked by the day or the ton; that he changed his mind about working for Nolan because Nolan was going to Mexico with his outfit, and Bent was hiring other teams at six dollars per day, and that he knew Bent had obtained an order from Nolan. Reynolds testified that plaintiff sent him to Bent with a message "that, unless Bent would pay him for hauling, that he would not haul any more"; and Bent said he would pay him; that he did not want him to quit hauling. This witness was cross-examined at considerable length, and his attention was called to his deposition taken in the case, and, among other things, the following: "Q. State what message you delivered. A. Mr. Chapman told me to tell Mr. Bent that, unless he would secure his pay for hauling, he wouldn't haul any more, but would take his teams off." Daniel Leibee, called for the defendant, testified that on or about July 16th he was trying to see Bent to get a job of hauling, but did not find him; that Chapman told him he could go on with his team at $6 per day, and said, "My teams are hauling by the ton." The defendant, testifying in his own behalf, testified: That at the time he made his contract with Nolan, Nolan said that Chapman was trying to back out of the whole thing now. That Chapman undertook to explain, but Bent said that it did not concern him, as his bid was from Nolan. That Nolan then said, "Of course, Chapman and I are working together on it." That he (Bent) could not state the exact words, but that he was given to understand that they expected to put on an equal number of teams; and that Chapman, as Mr. Nolan expected to go away to Mexico, would have a general supervision of the work. That the work was commenced June 9th, but it soon began to drag, and he sent Mr. French to Chapman repeatedly to tell him "that he must put on the teams that he led us to believe he would, or else tell us he would not." That he came near forfeiting half of his contract on account of the delay in hauling. That he then arranged with Nolan to get teams by the day; to pay six dollars for four-horse teams, and to

pay them first of all out of moneys due to Nolan. That on July 5th or 6th he met two of Chapman's teams as he was driving along the road in his buggy, and the teamsters told him that Chapman wanted to see him, and he asked, What about? and they said, "He wants to know where his pay is coming from"; and that he replied he would see him. That he did not say that he would pay him, or be responsible for his pay. That he drove over to see Chapman the next day, and he said he wanted to make some arrangement by which he (Bent) would guarantee his pay. That he (Bent) said: "What is the matter with Nolan?" That Chapman replied: "Nolan is all right, but he is going to Mexico, and I don't want to chase him for a year or two to get my money to come through him. I want you to secure it. I want you to guarantee it." That witness replied: "I can't do that, Mr Chapman. I have no contract with you. My deal is with Mr. Nolan." That Chapman then said: "Then I will have to take off my teams, because I won't run any risk." That witness replied: "I don't want you to do that. Why don't you get an order from him?" He replied: "I can't get an order from him." That witness said: "I will. Perhaps I can help you get an order"; and Chapman replied: "If you can get an order, so that I am safe, I will go on and haul." That witness telephoned for an order, and received it on the 8th or 9th. It was dated July 7th. That two or three days after that he passed Chapman on the road, and told him that he got the order, and Chapman replied, "All right," and both drove on, neither stopping the horses. That about ten days afterward Chapman asked whether the order covered the board of his teamsters and his blacksmith, and Mr. Bent replied that he did not know; that he had to pay him out of the money due Nolan when he and Nolan have agreed upon the amount; and that Chapman replied: "All right. Of course, that is all that I could expect." When the work was completed, defendant settled with the teamsters he had procured for Nolan, Nolan being present, and approving the payment to each, and the amount was charged to Nolan. Chapman's account was sent for, and he sent a pencil memorandum of the number of tons hauled, and the amount of the board and blacksmith bills which he had charged to Nolan; but this memorandum did not distinguish between the long and the short hauls.

Afterward, on August 8th, a typewritten bill was presented by Chapman, giving the number of pieces of each size of pipe, with the weight of each in tons, the number of tons of cement, and distinguishing between the long and short haul, and also the amount of the board and blacksmith bills, and the amount of the hauling at the contract price per ton, without deducting breakages, to be $609.50. It was found, however, that, after paying for the extra teams, there was nothing due to Nolan, and defendant had paid out therefor $560 in excess of the contract price. The defendant was strongly corroborated in reference to the order on Nolan, to the effect that Chapman did not want his money to come through Nolan, and that he would put the teams on if he could get an order from Nolan to Bent for his pay, as well as in other matters not so important. Plaintiff was called in rebuttal, and testified that in a certain interview at the Windsor Hotel he did not say that he was not under obligations to Bent, and was not working for him, and explained that by the use of the word "we," in a certain letter, he did not mean that he and Nolan were partners; that they were not partners; and further testified that he got a dollar and a half for all he hauled. No other evidence was given in rebuttal.

When this action was commenced the defendant demanded a bill of particulars, and it was served. It stated the number of his teams used in hauling each day from July 1st to July 26th, inclusive, aggregating ninety days for one team. It contained no statement of the number of tons hauled. The testimony showed that Nolan was to pay him the same compensation for hauling that Nolan was to receive under his contract, and that compensation was a given price per ton. Plaintiff testified, "There was nothing said between Mr. Bent and me whether by the day or by the ton." At the conclusion of the work, however, he furnished a statement giving the total number of tons hauled, but no dates at which any part of the hauling was done, and charged the same price per ton that Nolan was to receive under his contract. Plaintiff's bill of particulars, served in response to a demand therefor, became a part of his complaint, and, if he can recover in this action, he must recover upon the cause of action shown thereby. But plaintiff's statement to defendant and Nolan, made at the conclusion of the work in the settlement between Nolan and defendant,

showed conclusively: First, that he performed no services by the day, as alleged by his complaint and bill of particulars; and, second, that, defendant having obtained an order from Nolan, as desired by plaintiff, he continued to work for Nolan to the end. If, after the 1st of July, he worked for defendant, and not for Nolan, he would either have charged for his teams by the day, specifying the number of days, and the amount or the number of tons hauled before the date of his alleged agreement with Bent, and the number of tons hauled after that date. The plaintiff knew of the order given by Nolan. He said Nolan was all right, but he was going to Mexico, and he did not want "to chase him for a year or two to get his money," and he asked Bent to guarantee his pay; not that he wanted a new contract. On the 8th of August plaintiff presented his typewritten bill, before referred to, in which was charged the whole number of tons hauled by him, but giving no dates at which the hauling, or any part of it, was done. He was then informed by defendant that there was no money due Nolan. Defendant testified: "He said: 'Why, what about that order? Didn't you expect to pay me when you got that order?' I said, 'I certainly did.' He says, 'You know I told you I would take off my teams unless I was sure of my pay.' I said: 'Yes, you did. But,' I said, 'I supposed, and we all supposed, there would be money not only for you, but a balance for Nolan. Nolan had this contract all through. That was a loss to himself. There is not a dollar coming to him, and you are in the same boat.' He expressed his disappointment, and wanted to know what he was going to do. I said: 'Either you are a partner, or you are working for somebody. You certainly were not working for me.' He replied: 'No, I wasn't working for you. You got that order, and I considered you were going to pay me.' " Defendant further testified that he and the plaintiff went over the figures together; that in none of the conversations was anything said about working by the day, or that plaintiff was working for him. Mr. French, who was present at the foregoing interview, fully corroborated Mr. Bent, and though the plaintiff testified in rebuttal, he denied no part of the conversation on the 8th of August except the statement that he was under no obligations to Bent, and was not working for him.

Respondent contends that there is a conflict in the evidence, and that, therefore, the findings and judgment must stand. But the conflict must be a material one. There cannot be a doubt that the plaintiff continued to haul upon the faith of the order given by Nolan upon defendant. The plaintiff not only testified that Nolan was all right, but that he did not want to follow him for a year or two, and wanted his money to come through defendant; but he also testified that he did not suppose that he could compel Bent to pay him for work already done, nor has he attempted to do so. True, he testified that he went to work for Bent at that time. This was before the order was obtained. That he did go on, relying upon the order, is clear. He did not keep a separate account of his work after that date, and his account was for all the work done, stating only the entire number of tons of each size of pipe in a single item, with no possibility of ascertaining therefrom how much he hauled after his alleged arrangement to work for the defendant, and doubtless for that reason he brought his action charging the defendant by the day for his teams. It is not necessary to discuss the question whether Chapman was Nolan's partner or was a subcontractor or employee. Bent's contract was with Nolan. Mr. French, a witness called by defendant, was cross-examined by the court, and this question was put: "So these extra teams absolutely ate up the whole profit on the $1.50 for the upper and $1.15 for the lower hauling? A. Yes." The suggestion made by this question should be noticed. The plaintiff sought to recover upon a quantum meruit for the use of his teams, and gave evidence that $6 per day for each team was the reasonable value thereof. It is shown that that was the price paid for the extra teams that were employed by defendant for Nolan. The plaintiff, therefore, proved that not more than the reasonable value of the services of those teams was paid, and therefore he was not injured. Besides, the plaintiff testified that nothing was said between him and Bent as to whether he was to haul by the day or by the ton, and added, "Well, it did not make any difference, but amounted to about the same thing." But it is immaterial whether it cost more or not, since it would not affect plaintiff's right to recover from Nolan according to whatever agreement he had with him under which he did the hauling. That defendant, by

completing his contract on time, earned and received a bonus of $500 from the water company is wholly immaterial. He was not bound to share it with anyone. The finding that plaintiff performed work, labor and services for the defendant is not justified by the evidence. I advise that the judgment and order appealed from be reversed and the cause remanded.

We concur: Gray, C.; Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded.